IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAWN WARDLE TAMBURRI,<br><br>      Plaintiff,<br><br>  vs.<br><br>CITY OF STAYTON, an Oregon municipal corporation; DAVID BALL, individually and in his official capacity as a Stayton City Police Officer; BOB THOMAS, individually and in his official capacity as a Stayton City Police Detective; and MICHAEL MEEKS, individually and in his official capacity as a Stayton City Police Sergeant,<br><br>      Defendants. | Civil No. 06-6305-AA<br>OPINION AND ORDER |

Samuel T. Stanke
Attorney at Law
1400 SW Montgomery St.
Portland, Oregon 97201
    Attorney for Plaintiff

Gerald L. Warren
Attorney at Law
280 Liberty St., Suite 206
Salem, Oregon 97301-3595
    Attorney for Defendants

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Defendants filed a motion for summary judgment asserting that they are entitled to judgment as a matter of law on plaintiff's claims for violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Oregon Constitution, false arrest, malicious prosecution, invasion of privacy, assault and battery, fraud, defamation and defamation per se, intentional infliction of emotional distress, and negligence. Plaintiff filed a cross-motion for summary judgment on the issue of probable cause. Defendants' motion is granted in part and denied in part. Plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff was prescribed a narcotic pain medication, Oxycodone, for which she is required to sign a contract regarding its usage. Plaintiff became aware around 4 p.m. on April 19, 2006, that her Oxycodone was missing. Plaintiff called her prescribing physician's office to request a refill but was informed that prior to refilling the prescription, plaintiff must report the missing medication to the police. Plaintiff reported the missing medication to the police around 9:30 a.m. on April 20, 2006.

Officer Ball received the report of the missing medication from dispatch and called the plaintiff to inform her that he needed to take the report in person. Plaintiff invited Officer

Ball into her house and bedroom where she reviewed the facts surrounding her loss of the Oxycodone.

On April 24, 2006, plaintiff called the Stayton Police Department and requested that any additional interviews be conducted at her residence. At some point plaintiff informed the police that on April 23, 2006, her neighbor found her medicine under her mailbox. The date that plaintiff informed the police that her Oxycodone was recovered is disputed.

On April 24, 2006, Officer Ball and Detective Thomas arrived at plaintiff's residence to conduct the second interview with plaintiff regarding her reported loss of the Oxycodone. Plaintiff greeted the officers at the door. Officer Ball alleges that plaintiff was visibly nervous during the interview and that plaintiff's story contained inconsistencies. Plaintiff was subsequently arrested for filing a false police report[1] and handcuffed without incident.

Plaintiff requested that she be allowed to take her medications with her. The police agreed, therefore the police and plaintiff entered her bedroom to retrieve the medication. As the police and plaintiff were retrieving her medications,

---

[1] ORS 162.375 provides in relevant part: "(1) A person commits the crime of initiating a false police report if the person knowingly initiates a false alarm or report which is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property. (2) Initiating a false report is a Class C misdemeanor."

Page 3 - OPINION AND ORDER

Detective Thomas observed a prescription bottle labeled "Oxycodone" with plaintiff's name on the bottle and seized it.

Officer Ball was providing physical support or assistance to plaintiff as Detective Thomas went through her medications. Plaintiff alleges that she lost her footing, which Officer Ball took to be resistance. Officer Ball then threatened to use his Taser on plaintiff, although did not do so.

Plaintiff was placed in the patrol car and transported to the Police Department around 1:40 p.m. Plaintiff was booked and released around 4:15 p.m. that same afternoon.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence

Page 4 - OPINION AND ORDER

of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  <u>T.W. Electrical</u>, 809 F.2d at 630.

DISCUSSION

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 alleging violations of her Fourth Amendment rights, as well as Oregon's Constitution Article I § 9, to be "free from unreasonable searches and seizures" and conspiracy to violate her civil rights.  Plaintiff also brings supplemental state tort claims alleging false arrest, malicious prosecution, invasion of privacy, assault, battery, fraud, defamation and defamation per se, intentional infliction of emotional distress, and negligence.

<u>Plaintiff's 42 U.S.C. § 1983 Claim - Officers</u>

Plaintiff alleges her Fourth Amendment Rights were violated because she was arrested without probable cause and her medicines

Page 5 - OPINION AND ORDER

were seized at the time of arrest without a warrant. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

Defendants Ball and Thomas have raised the defense of qualified immunity. A qualified immunity analysis begins with this threshold question: based upon the facts taken in the light most favorable to the party asserting injury, did the officer's conduct violate a constitutional right? Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001)(citing Saucier v. Katz, 533 U.S. 194 (2001))(internal citations omitted). If no constitutional right was violated, the court need not inquire further. Id. If, however, a violation could have occurred, the second inquiry is whether the officer could have reasonably, but mistakenly, believed that his or her conduct violated a clearly established constitutional right. Id.

Plaintiff alleges that her Fourth Amendment rights were violated when Officer Ball arrested her without a warrant and allegedly without probable cause. Whether a warrantless arrest is constitutionally valid depends upon whether, at the moment of

Page 6 - OPINION AND ORDER

arrest, the officer had probable cause to make the arrest. United States v. Martin, 509 F.2d 1211, 1213 (9th Cir. 1975). The existence of probable cause negates a § 1983 claim based on false arrest and the legality of the arrest is not affected by the subsequent dismissal or acquittal of the charges. Pierson v. Ray, 386 U.S. 547, 555 (1967). Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer are sufficient to lead a prudent person to believe the suspect has committed, is committing, or is about to commit a crime. Mackinney v. Nielsen, 69 F.3d 1002, 1005 (9th Cir. 1995)(citing U.S. v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989)).

Plaintiff argues there was no probable cause for her arrest. First, plaintiff alleges that the report was not false. The court finds this argument without merit. Although a report must be "false" to qualify as filing a false police report, whether the report was actually false does not affect whether there was probable cause to believe the report was false.

Next, plaintiff argues that there is a genuine issue of material fact as to whether defendant Ball had probable cause to believe plaintiff's report was "false." It is undisputed that plaintiff's medication was reported missing and was found shortly before the officers came to visit plaintiff's home for a second time. Plaintiff admits she was nervous during the officers'

Page 7 - OPINION AND ORDER

second visit.  Officer Ball stated in his declaration that plaintiff was shaking and visibly nervous.  Plaintiff does not recall whether she was shaking and "has no way of knowing whether she was 'visibly nervous'" and therefore denies this fact. Plaintiff's Response to Defendants' Statement of Material Facts, pg. 3, ¶ 10.   Plaintiff fails to provide evidence that Officer Ball's observations were not accurate.  Further, Officer Ball and Detective Thomas allege that plaintiff's recounting of the events surrounding the missing medication contained many inconsistencies.

Given the highly addictive nature of Oxycodone, the missing and then reappearing medication, and plaintiff's suspicious behavior, Officer Ball suspected that plaintiff falsely filed her report to the police.  Relying on the totality of the circumstances, the evidence supports Officer Ball's probable cause to believe plaintiff's report was false.

Next, plaintiff raises the issue of the specific intent requirement of ORS 162.375.  The statute states that a crime has been committed if a person knowingly files a false report.  ORS 162.375(1).  Generally, officers need not have probable cause for every element of the offense, but they must have probable cause for specific intent when it is a required element.  Edgerly v. City of San Francisco, 495 F.3d 645, 652 (9th Cir. 2006).

Plaintiff offers as evidence portions of Officer Ball's

Page 8 - OPINION AND ORDER

deposition to show that Officer Ball did not have probable cause as to the element of "knowingly."

> Question:  So, what was your - - in charging Ms. Tamburri with knowingly initiating a false report, behind that charge you're saying she knew at the time that the items were not stolen or lost.
>
> Officer Ball:  I didn't charge her with knowingly initiating a false report.  I charged her with initiating a false report.
>
> Ball Deposition, Plaintiff's Exhibit 6.

Officer Ball's testimony reveals that he believed plaintiff knew where her medication was the entire time and had lied to the police.  Defendants argue that ORS 161.085(8) defines "knowingly" as "a person acts with an awareness that the conduct of the person is of a nature so described."  Id.  Defendants argue that because "intent and knowledge may be inferred from a [suspect's overall] actions, Officer Ball could reasonably find an inferred intent that plaintiff knew her medicine was not stolen and that is all that is required." Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (emphasis added)(citing United States v. Lorenzo, 570 F.2d 294, 299 (9th Cir. 1978)).

While the court finds evidence that Officer Ball could have

Page 9 - OPINION AND ORDER

reasonably inferred intent, the court must interpret all disputed facts in the light most favorable to the nonmoving party. Officer Ball's testimony that he was charging her with initiating a false report rather than charging her with knowingly initiating a false report is evidence that Officer Ball did not understand that knowingly was an element of the crime at the time of arrest. If he did not understand that specific intent was an element of the crime, a reasonable juror may conclude he could not have probable cause as to the specific intent.

The court now determines whether qualified immunity is applicable by analyzing whether Officer Ball reasonably, but perhaps mistakenly, believed that his conduct did not violate a clearly established constitutional right.

As evidenced by the deposition testimony quoted above, if Officer Ball believed that he was charging plaintiff with initiating a false police report rather than knowingly initiating a false police report, he would not understand that "knowingly" was an element of the crime for which he must have probable cause. It is reasonable to assume that Officer Ball mistakenly believed he had the probable cause necessary to make a valid warrantless arrest. Because he believed he had sufficient probable cause to charge plaintiff with filing a false police report he did not believe he was violating plaintiff's constitutional rights when he arrested her. Officer Ball and

Page 10 - OPINION AND ORDER

Detective Thomas are entitled to qualified immunity for plaintiff's arrest.

Plaintiff also alleges a Fourth Amendment violation for the seizure of the medication. Plaintiff admits that after she was arrested she asked if she could get her medicines to bring with her. Upon going through her medication, the police seized the Oxycodone. A seizure is justified under the plain view exception to the warrant requirement when: (1) the officers are lawfully searching the area where the evidence is found; and (2) the incriminatory nature of the evidence is immediate and apparent. Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir. 1996).

The officers lawfully searched plaintiff's bedroom. Consent to search is a well-established exception to the Fourth Amendment's prohibition of warrantless searches of homes. United States v. Enslin, 327 F.3d 788, 793 (9th Cir. 2003). The consent given must be voluntary and not a mere submission to an assertion of authority. Id. Plaintiff admits she asked the officers to get her medicine. This request shows voluntary consent to the officer's entrance into the area. Further, the entrance into the area was directly due to plaintiff's request that her medicine be retrieved and not due to the officers' request to search the premises. Plaintiff did not consent to the police entering the area to search, but rather asked the officers to enter in order to fulfil her request. The incriminatory nature of the

Page 11 - OPINION AND ORDER

medication was immediately apparent as the allegedly false police report was regarding Oxycodone. I find the medication seizure did not violate plaintiff's Fourth Amendment rights.

Defendants Ball and Thomas are entitled to qualified immunity on plaintiff's § 1983 claim.

Plaintiff's 42 U.S.C. § 1983 Claim - City of Stayton

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). However, when it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

Plaintiff alleges that defendant City of Stayton is liable because Officer Ball had control over whether to arrest people suspected of crimes and lacked adequate training regarding the general requirements of the Fourth Amendment. Defendants dispute plaintiff's claim that Officer Ball lacked adequate training. Viewing the facts most favorably to the nonmoving party, the court will assume that Officer Ball was not trained properly. However, a municipality may only be held liable for failing to train when there is a "deliberate indifference." City of Canton,

Page 12 - OPINION AND ORDER

<u>Ohio v. Harris</u>, 489 U.S. 378 (1989).  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."  <u>Id.</u> at 390-91.  Plaintiff fails to identify the specific deficiency in the City's training or provide evidence of any deficiency on the part of the City.  Defendants' summary judgment motion on plaintiff's § 1983 claim against the City is granted.

Defendants' motion for summary judgment on plaintiff's § 1983 claims against all defendants is granted.  Plaintiff's cross-motion for summary judgment on the issue of whether there was probable cause to support the arrest is denied.[2]

<u>Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim</u>

Plaintiff alleges that defendants are liable under 42 U.S.C. § 1985(3)[3].  Plaintiff met Henock Tilahum a few weeks prior to these events and Mr. Hencock was with the plaintiff on the day

---

[2] Despite plaintiff's violation of Local Rule 7.1, the court nonetheless considered plaintiff's untimely cross-motion and overlength brief.

[3] 42 U.S.C. § 1983(3) states: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

Page 13 - OPINION AND ORDER

that her medication allegedly went missing. Plaintiff alleges that after her release and the charges against her were dropped, defendants dispatched Mr. Tilahum to convey a message to dissuade her from asserting her civil rights. Plaintiff's deposition testimony states that she believed that Mr. Tilahum was a police agent because she met him four to six weeks before the arrest and he used the term "Oxycodone" during a conversation after the arrest, which was a term she believed he was not sophisticated enough to know unless he had heard it from the police.

Officer Ball declared that to the best of his knowledge, Mr. Tilahum is not and never has been a police operative. Mr. Tilahum had previously been reported to the police for having sold marijuana and prescription drugs to high school students in the community. Plaintiff has not provided the court with any evidence to support her claim that Mr. Tilahum is in some way associated with the police or that the police asked Mr. Tilahum to deliver such a message. Plaintiff's conspiracy claim is based on pure speculation from surrounding circumstances. Defendants' motion for summary judgment as to plaintiff's § 1985 claim is granted.

Without plaintiff's § 1983 and § 1985 claims, the only claims that remain are those alleging state statutory or common-law violations; those claims may come within this court's jurisdiction only by way of supplemental jurisdiction. Title 28

Page 14 - OPINION AND ORDER

U.S.C. § 1367 provides the basis for supplemental jurisdiction:

> Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Subsection (c) of 28 U.S.C. § 1367 gives the court discretion to "decline to exercise" supplemental jurisdiction in various circumstances, including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Although this exercise is discretionary with the court, the Ninth Circuit has strongly advised that in most circumstances, the *proper* exercise of discretion requires the dismissal of the state claims. Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (emphasis in original) (quoting Wren v. Sletten Const. Co., 654 F.2d 529, 536 (9th Cir. 1981)).

    Here, plaintiff's claims over which the court has original jurisdiction has been dismissed, and the court declines to exercise supplemental jurisdiction over the remaining state law

Page 15 - OPINION AND ORDER

claims against defendants.[4]  Therefore, defendants' summary judgment motion on plaintiff's remaining claims is denied as moot.

## CONCLUSION

Defendants' motion for summary judgment (doc. 15) is granted as to plaintiff's 42 U.S.C. §§ 1983 and 1985 claims and denied as moot as to plaintiff's other claims.  Plaintiff's alternative cross-motion for summary judgment (doc. 34) is denied.  Finally plaintiff's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this  10  day of December 2007.

                              /s/ Ann Aiken
                              Ann Aiken
                       United States District Judge

---

[4] The Ninth Circuit recommends that a case dismissed for lack of subject matter jurisdiction ordinarily should be dismissed without prejudice so that a plaintiff may reassert his or her claims in state court.  Frigard v. United States, 862 F.2d 201, 204 (9th Cir. 1988) (citation omitted).

Page 16 - OPINION AND ORDER